**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARRIE F., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-cv-4221 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Carrie F.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Defendant's motion for summary judgment [dkt. 15] is GRANTED; Plaintiff's motion for summary judgment [dkt. 10] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

1. **Background**

   1.1. **Procedural History**

   On October 20, 2015, Plaintiff protectively filed for Supplemental Security Income, alleging a disability onset date of June 1, 2014. [Administrative Record ("R.") 13.] An Administrative Law Judge ("ALJ") issued a November 7, 2018 decision denying Plaintiff benefits. [R. 13-25.] Plaintiff filed suit (NDIL Case No. 19-cv-8499) and the Commissioner ultimately conceded the ALJ's November 7, 2018 decision was appropriate for an Agreed Remand, which the Court entered on

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    Plaintiff has filed a Memorandum in Support of Reversing or Remanding Commissioner's Decision [dkt. 10], which the Court construes as a motion for summary judgment. In the future, Plaintiff's counsel is cautioned to more carefully adhere to Local Rule 5.2(e) as well as this Court's standing orders on margin size, font size, and spacing, which were violated in Plaintiff's opening brief.

November 20, 2020. [R. 2308.] Thereafter, the Appeals Council ("AC") entered an order vacating the November 7, 2018 decision and directing a new ALJ to resolve several specific issues going forward. [R. 2313-15.] A new ALJ was assigned to Plaintiff's case and a new Administrative Hearing was held. [R. 2197.] On June 3, 2021, a new ALJ issued another unfavorable decision for Plaintiff. [R. 2197-2225.] On August 9, 2021, Plaintiff again filed suit to challenge this decision. [Dkt. 1.] On April 21, 2023, the case was reassigned to Judge Cox pursuant to Local Rule 40.3(c) because Judge Cox had entered the Agreed Remand in Plaintiff's earlier case. [Dkt. 22.] The ALJ's June 3, 2021 is the decision now before the Court.

### 1.2. The ALJ's Decision

At Step One of the ALJ's June 3, 2021 decision, the ALJ noted some low-level earnings during the period in question, and also discussed Plaintiff's income from making and selling dolls. [R. 2200.] The ALJ discussed how Plaintiff

> testified that she makes dolls at home and has been selling them for the couple of years for about $250-450 per doll and makes about $100-200 in profit per doll. She testified that in 2020 she had a gross income from selling dolls of $38,000 and a net profit of only $1022, but that her accountant told her to report $15,000 because otherwise she would be audited.

[R. 2200.] Plaintiff was asked to submit her 2020 income tax records to substantiate these claims but failed to do so. [*Id.*] Ultimately, the ALJ gave Plaintiff the benefit of the doubt and found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 20, 2015. [*Id.*]

At Step Two, the ALJ found that Plaintiff had the severe impairments of: osteoarthritis of the right hip; degenerative disc disease of the lumbar spine; fibromyalgia; possible narcolepsy; depressive disorder; anxiety disorder with post-traumatic stress disorder ("PTSD"); obsessive compulsive disorder ("OCD"); personality disorder; and attention deficit hyperactivity disorder ("ADHD"). [*Id.*] The ALJ determined that Plaintiff had two impairments, Raynaud's syndrome and partial complex seizures, which were not medically determinable. [R. 2200-01.]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 2201-05.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to extremes of cold, heat, or humidity; can perform simple, routine tasks involving simple work-related decisions; the ability to deal with changes in a routine work setting not requiring collaborative or team tasks with coworkers and not requiring interaction with the public; no operating a motor vehicle; no climbing ladders, ropes, or scaffolds; and no working around unprotected heights, open flames, or unprotected dangerous moving machinery. [R. 2206.] At Step Four, the ALJ found Plaintiff had no past relevant work, but that other jobs existed in significant numbers in the national economy Plaintiff could perform. [R. 2224.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 2225.]

## 2.  Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over, and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's

age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's residual functional capacity ("RFC") in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. Under the substantial evidence standard, the court neither reweighs the record nor second-guesses the ALJ's judgment. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Further, while reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001.

**3.    Discussion**

Plaintiff alleges the ALJ erred in four ways in her June 3, 2021 decision: (1) she failed to

properly analyze the medical opinions in this matter; (2) she improperly rejected statements made by Plaintiff's mother; (3) she improperly rejected Plaintiff's subjective symptoms; and (4) she crafted an RFC assessment inconsistent with Plaintiff's documented limitations. The Court disagrees with each of these contentions, as detailed below.

### 3.1. The ALJ Properly Assessed the Medical Opinions of Record

#### 3.1(A). Dr. Ann Sarpy

Dr . Ann Sarpy, MD, Plaintiff's treating psychiatrist, provided two opinions and a Global Assessment of Functioning ("GAF") score for Plaintiff. In August 2016, Dr. Sarpy filled out a Mental Impairment Report for Plaintiff. [R. 672-75.] In that report, Dr. Sarpy wrote that "[Plaintiff] reports that she misses appointments…due to panic responses," "[Plaintiff] reports that she gets distracted," and "[Plaintiff] reports all attempts at outside work have failed due to symptoms." [R 672-73.] Dr. Sarpy then checked boxes indicating Plaintiff's affective disorder caused moderate restriction in activities of daily living, moderate and sometimes marked difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and mild repeated episodes of decompensation of extended duration. [R. 673.] On another page, Dr. Sarpy checked boxes indicating that Plaintiff's anxiety-related disorder caused moderate and marked restrictions in activities of daily living, moderate and marked difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and mild repeated episodes of decompensation. [R. 675.]

In May 2018, Dr. Sarpy filled out a Mental Residual Functional Capacity Statement, which consisted of both check-box response areas as well as spaces for the physician to add written responses. [R. 1815-18.] Dr. Sarpy checked that Plaintiff would be precluded from performing the following tasks for at least 15% of the workday: remembering locations and work-like procedures; understanding and remembering detailed instructions; carrying out detailed instructions; maintaining

attention and concentration for extended periods; completing a normal workday or workweek; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; and traveling to unfamiliar places. [R. 1816-17.] She also indicated, "per PCP report," that Plaintiff would be limited by seizures, herniated discs, and extreme fatigue. [R. 1817.] She opined that Plaintiff would be off task 15% of the workday and would miss more than six days of work per month. [*Id.*] Dr. Sarpy relayed that Plaintiff reported she had never been able to work an eight-hour day. [*Id.*] She assigned a GAF score of 55.[3] [R. 1818.] When asked if she believed Plaintiff was unable to obtain and retain competitive full-time work, Dr. Sarpy wrote that "[Plaintiff] reports due to anxiety and OCD the most she has been able to work is part time." [*Id.*]

The ALJ addressed both Dr. Sarpy's opinions in depth. [R. 2221-23.] The ALJ acknowledged Dr. Sarpy was Plaintiff's treating psychiatrist. [R. 2221-22.] But there were several reasons the ALJ found the opinions unpersuasive. With regard to the 2016 opinion, the ALJ noted that Dr. Sarpy did not refer to any specific objective findings to support her opinions, and thus left her opinion largely unsupported. [R 2221.] 20 C.F.R. § 416.927(c)(2), (c)(3); *see, e.g., Vang v. Saul*, 805 F. App'x 398, 401 (7th Cir. 2020) ("ALJ may give less weight to an opinion that is unsupported by objective evidence"). The ALJ also found that the opinions were inconsistent with other evidence, including, for example, Dr. Sarpy's records reflecting that Plaintiff's condition was stable, the lack of any psychiatric deficits at a medical consultative examination, and a mental status essentially within normal limits at a psychological consultative examination. [R. 2221 (citing R. 94, 486, 504, 535, 544, 551-53).] 20 C.F.R. § 416.927(c)(2), (c)(4); *see, e.g., Kuykendoll v. Saul*, 801 F. App'x 433, 437-38 (7th Cir. 2020) (affirming

---

[3] Although the GAF is not used in the most recent version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM V"), it was used in the previous version of that text ("DSM IV"), and is often relied on by doctors, ALJs, and judges in social security cases. *See Steele v. Colvin*, 2015 WL 7180092 at *1 (N.D. Ill. Nov. 16, 2015). The lower the GAF score, the greater the degree of impairment. *Id.* A score between 41 and 50 indicates "serious symptoms" such as suicidal ideation, severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work)." A score between 51 and 60 represents "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* Anything above 60 would indicate mild symptoms. *Id.*

decision to reject treating opinion that was inconsistent with the record and not fully explained). And perhaps most importantly, the ALJ noted that Dr. Sarpy expressly stated several times that her statements were based on Plaintiff's reports, not her own examination of Plaintiff or objective findings. [R. 2221.] It was not erroneous for the ALJ to have assigned little weight to Dr. Sarpy's opinions when Dr. Sarpy indicated she was passing along Plaintiff's subjective reports, rather than forming an opinion based on objective observations or examinations. *See Britt v. Berryhill*, 889 F.3d 422, 426-27 (7th Cir. 2018) ("ALJ can give less than controlling weight to medical opinions based on subjective reports and can even reject a doctor's opinion entirely if it appears based on a claimant's exaggerated subjective allegations"); *see also Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

With regard to Dr. Sarpy's 2018 opinion, the ALJ explained that Dr. Sarpy again failed to relay any objective or clinical findings, leaving the opinion unsupported. [R. 2222.] 20 C.F.R. § 416.927(c)(2), (c)(3); *Vang*, 805 F. App'x at 401. The ALJ also found the 2018 opinion inconsistent with a significant amount of evidence in the record. [*Id.*]; 20 C.F.R. § 416.927(c)(2), (c)(4); *Kuykendoll*, 801 F. App'x at 437-38. Specifically, the ALJ noted that Dr. Sarpy's opinion was inconsistent with her own treatment notes, which recorded no deficits in appearance, speech, psychomotor behavior, thought processes, thought content, judgment, orientation, attention, memory, or intellectual functioning. [*Id.* (citing R. 1217-19, 1248-50, 1276-78, 1306-08, 2739-40, 2748).] The ALJ considered that Dr. Sarpy did not recommend any more intensive treatment modality, and that Plaintiff's therapy records generally reflected that Plaintiff was making progress. [*Id.* (citing R. 560, 1002, 1254, 1697, 1751, 2588).] Contrary to Dr. Sarpy's opinion Plaintiff would have significant difficulty focusing on a task or concentrating, the ALJ noted that in instances where Plaintiff was required to interact and communicate with strangers, the people with whom she interacted noted no deficits in her ability to do so. [*Id.* (citing, *inter alia*, R 369, 788, 824, 848, 851, 920, 2037).] This includes Plaintiff's emergency

room records, which the ALJ focused on because Plaintiff was treated by people with whom she did not have a relationship or regular interaction, and who did not have prior knowledge of her medical background; the emergency room staff were strangers to whom Plaintiff had to relay her medical history and adequately communicate her concerns in order to obtain their assistance. Further, they were providers specialized in quickly assessing patients, including for psychiatric issues. The fact they did not note mental deficits, despite the demands of the situation, reasonably suggested to the ALJ that Plaintiff's limitations were not as extreme as Dr. Sarpy opined. The Court does not find the ALJ erred in her conclusions about these records in comparison to Dr. Sarpy's opinions. And, finally, the ALJ noted that Dr. Sarpy again expressly relayed Plaintiff's complaints, rather than making her own objective assessments. [*Id.*] This was a good reason for the ALJ to have discounted Dr. Sarpy's opinion. *See*, *e.g.*, *Britt*, 889 F.3d at 426-27; *Patrick R. v. Saul*, 2020 WL 777295, at *7 (N.D. Ill. Feb. 18, 2020) (affirming ALJ's decision not to adopt physician's limitations because they relied too heavily on subjective complaints, which were inconsistent with objective evidence showing normal examinations throughout the disability period).

While Plaintiff disagrees with the ALJ's conclusion that the evidence did not reflect repeated, extended episodes of decompensation as opined by Dr. Sarpy, Plaintiff herself fails point to evidence substantiating episodes of decompensation, as is her burden.[4] *Vang*, 805 F. App'x at 401-02 ("Ultimately, it was [plaintiff's] burden, not the ALJ's, to prove that he was disabled."); *see also Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022); *Kaplarevic v. Saul*, 3 F.4th 940, 943 (7th Cir. 2021). On the

---

[4]     A prior version of the mental impairment listings explained episodes of decompensation: "Episodes of decompensation are exacerbations or temporary increases in symptoms…Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require an increase in treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (*e.g.*, hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." Program Operations Manual System DI 34132.0001(C)(4), available at https://secure.ssa.gov/poms.nsf/ lnx/0434132011. The listing explained that an episode must last at least two weeks to be considered an extended episode of decompensation. *Id.*

other hand, the ALJ did discuss many ways she felt demonstrated Plaintiff was not decompensating, from largely normal mental status examinations to Plaintiff's regular activities. [R. 2207-16.]

Next, Plaintiff complains the ALJ made an erroneous inference based on Plaintiff's cancelled appointments with Dr. Sarpy. Specifically, the ALJ made the following statement:

> …Much of the treatment notes prior to Dr. Sarpy providing this opinion [on Plaintiff's limitations] show [Plaintiff] reported improvement or being stable with medication, canceled several appointments, and had no psychiatric deficits during an internal medicine consultative exam and a psychological consultative exam that was "essentially within normal limits"…

[R. 2221 (citations omitted)]. The Court agrees that this reference to Plaintiff's cancelled appointments somewhat implies that a cancelled appointment is indicative of psychiatric improvement. Plaintiff is correct that "if anything, the fact that Plaintiff cancelled appointments indicates an inability to show up, and not, as the ALJ implied, some sort of miraculous abatement of symptoms." [Dkt. 10, p. 12.] However, in the same paragraph, the ALJ also noted that per Dr. Sarpy, Plaintiff "reports that she misses appointments and resists certain [activities of daily living] due to panic responses." [R. 2221.] The ALJ noted the correct reason for Plaintiff's missed appointments in the same paragraph she implied they demonstrated psychiatric improvement. The Court does not find this single implication, within a paragraph of ten reasons for rejecting Dr. Sarpy's opinions, constitutes remand.

Plaintiff also criticizes the ALJ for placing too much emphasis on her "admirable attempts to do crafts at home," because she merely "makes dolls at home (when she feels like it)" and, thus, this is not a reason for the ALJ to have rejected Dr. Sarpy's opinions. [Dkt. 10, p. 13.] Plaintiff argues that her doll-making is not indicative of an ability to work full time. While it is true the Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment" *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017), this is not what the ALJ did here. Rather, the ALJ determined that Dr. Sarpy's 2018 opinion that Plaintiff was unable to work since 2014 was "inconsistent with [Plaintiff's] history, which showed during the period in question that was

in fact able to work, including making, marketing, and selling dolls." [R. 2223.] Plaintiff testified that she sold $38,000 worth of hand-decorated dolls in 2020; to the extent the ALJ found that Plaintiff's ability to manage this enterprise undermined Dr. Sarpy's opinions of significant deficits, that was a reasonable conclusion. [R. 2200, 2243-45, 2247-48, 2262.] While the ALJ did indeed mention Plaintiff's doll making at other points in her opinion, the Court does not find the lone reference to this activity as evidence contradicting of Dr. Sarpy's opinions to be inappropriate. It was just another in a list of factors the ALJ found contradicted the restrictive opinions of Dr. Sarpy. Ultimately, the Court does not find the ALJ improperly equated Plaintiff's doll-making history with full time work, particularly since she also took care to note Dr. Sarpy's reports of Plaintiff's statements that "the most she has been able to work is part-time" and she "reports she has never been able to work 8 hours a day." [R. 2221.]

Finally, while Plaintiff is correct the Appeals Council did direct the ALJ to reevaluate the opinions of Dr. Sarpy, it is a stretch for Plaintiff to say the AC was "adamant in suggesting that the opinion should have been afforded substantial weight." [Dkt. 10, p. 11.] The weight afforded to a physician's opinion is strictly within the purview of the ALJ. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (ALJ determines how much weight to afford to medical opinions). And as long as an ALJ provides good reasons for adopting or discounting certain opinions, the Court must affirm the ALJ's decision. *Elder*, 529 F.3d at 415. Here, the ALJ has more than "minimally articulated" her justification for crediting other evidence over the opinions of Dr. Sarpy. *Berger*, 516 F.3d at 545. Thus, the ALJ's decision in this respect enjoys the support of substantial evidence. The Court will not overturn the ALJ's decision based on her consideration of Dr. Sarpy's opinions.

### 3.1(B). Plaintiff's Social Workers

Plaintiff complains (without even naming the treatment providers to whom she is referring) that the ALJ improperly rejected the opinions of "two long-term treating therapists." [Dkt. 10, p. 13.]

In this four-sentence argument, Plaintiff fails to cite any evidence to show the ALJ erred. *See, e.g.,* *Vang*, 805 F. App'x at 403 ("Perfunctory and undeveloped arguments are waived."); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("even arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law"). Plaintiff has waived this challenge. Nonetheless, the Court finds the ALJ adequately explained how she evaluated the opinions of social workers Jodie Green and Rebecca Fallert, and identified substantial evidence supporting her assessment. [*See* R. 2223.] The Court will not overturn the ALJ's decision on this basis.

### 3.1(C). Dr. Francis Lichon

Plaintiff makes a similarly perfunctory three-sentence argument that the ALJ erred in evaluating the opinion of Plaintiff's rheumatologist, Dr. Francis Lichon, M.D. [Dkt. 10, p. 13.] Again, perfunctory arguments are considered waived. *See, e.g., Vang*, 805 F. App'x at 403. However, the Court will briefly address the ALJ's treatment of Dr. Lichon's opinions. While Dr. Lichon's April 2021 Physical Residual Functional Capacity Statement offered some commentary on Plaintiff's mental impairments, it focused on physical functioning (which is borne out by the title of the document). [R. 2795-98.] Yet the ALJ adequately addressed several stark inconsistencies with evidence of record and Dr. Lichon's opinions, relating to both mental and physical functioning. For example, while Dr. Lichon opined that Plaintiff could not use her left hand, the ALJ found this contradicted by the fact Plaintiff was making dolls and selling them at this time. [R. 2218.] The ALJ also found Dr. Lichon's opinions on Plaintiff's ability to concentrate unsupported by the record because

> Although Dr. Lichon diagnosed [Plaintiff] with ADHD and prescribed her Adderall, Dr. Lichon is not a psychologist or psychiatrist and apparently did not perform any psychiatric testing on [Plaintiff]. [Dr. Lichon] also diagnosed [Plaintiff] with narcolepsy and then documented improvement in those symptoms with Adderall. During the hearing, [Plaintiff] testified that the Adderall was prescribed for narcolepsy. However, the record shows that initially this was prescribed for ADHD and only later did the doctor indicate the basis for this prescription was narcolepsy.

[*Id.* (citation omitted).] The ALJ also found Dr. Lichon's opinion internally inconsistent because Dr.

Lichon opined that Plaintiff could both sit one hour at a time but could sit for less than one hour per workday. The Court finds these three instances to be particularly strong examples of a physician's opinion being inconsistent with the record. The ALJ quite adequately articulated her justification for crediting other evidence over the opinions of Dr. Lichon. *Berger*, 516 F.3d at 545. When viewed through the lens of the stark contradictions the ALJ identified above, the Court does not believe the ALJ would have found Dr. Lichon's commentary/opinions on Plaintiff's mental impairments persuasive, nor would consideration of these have been likely to cause the ALJ to afford greater weight to Dr. Lichon's opinion as a whole. The Court does not find the ALJ should have given additional consideration to the mental impairment commentary made by Dr. Lichon, particularly since the doctor was being asked to opine on Plaintiff's physical abilities. The ALJ's decision is supported by substantial evidence as it relates to Dr. Lichon. The Court will not overturn the ALJ's decision on this basis.

### 3.1(D). State Agency Psychological Consultants

Finally, Plaintiff complains, again without even naming the consultants to whom she is referring, that the ALJ improperly assessed the opinions of the non-examining State Agency consultants. [Dkt. 10, p. 14.] First, Plaintiff seems to renew the suggestion that the AC order instructed the ALJ as to what opinions should be credited, but this is simply not accurate – the Appeals Council simply relayed the errors the Council found in the prior ALJ's decision and instructed the ALJ to fully consider the evidence on remand. [R. 2314.]

As to the ALJ's assessment of Joseph Cools, PhD, one of the State Agency psychological consultants, the ALJ found his opinions both internally inconsistent and inconsistent with other evidence of record. The ALJ then went on to thoroughly explain the handful of internal inconsistencies she identified, as well as note where Dr. Cools's opinion contradicted the evidence of record. [R 2218-20.] For example, Dr. Cools opined that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions or to sustain an ordinary routine. [R. 98.] Yet

the doctor then stated Plaintiff "would be unable to concentrate sufficient to perform even the most simple routine tasks on a sustained basis." [*Id.*] The ALJ reasonably found this internal inconsistency problematic. [R. 2219.] *See, e.g., Maureen G. v. Saul*, 2020 WL 2735373, at *4 (N.D. Ill. May 26, 2020) (adequately explained internal inconsistencies are a sound reason for discarding a physician's opinion) (citations omitted). ALJ also detailed several other internal inconsistencies [R 2218-19], as well as ways in which Dr. Cools's opinion was "inconsistent with the full record" before the ALJ [R. 2220]. In sum, the ALJ more than adequately detailed how Dr. Cools's "opinion is both internally inconsistent and does not cite to any specific findings in the record that would support a marked impairment in interacting or social functioning." [*Id.*]

The Court has had some difficulty parsing out the particularly undeveloped argument as to the opinions of the second State Agency consultant, Ellen Rozenfeld, Psy.D. The main thrust of this argument seems to be that the ALJ was "a bit confusing" in her analysis of Dr. Rozenfeld's opinions. [Dkt. 10, p. 14.] Though the ALJ assigned Dr. Rozenfeld's opinion only "some weight," the RFC is actually consistent with Dr. Rozenfeld's opinion. [*Compare* R. 2206 with R. 117-19.] The only aspect of Dr. Rozenfeld's opinion the ALJ questioned was whether the record actually demonstrated episodes of decompensation. [R. 2220.] However, despite opining that Plaintiff experienced one or two episodes of decompensation, Dr. Rozenfeld ultimately opined Plaintiff could perform work within the confines of the RFC finding. [R. 117-19.] Her opinion is essentially substantial evidence *in support of* the ALJ's decision. To the extent Plaintiff obliquely hints at decompensation, she points to no evidence she experienced episodes of decompensation that satisfy the listing definition for an episode of decompensation. *See* fn. 4, *supra*. But, regardless, Dr. Rozenfeld did not suggest that episodes of decompensation required any additional restrictions in the RFC finding.

Ultimately, the Court finds no reason to overturn the ALJ's decision based on her consideration of the opinions of the non-examining State Agency consultants.

### 3.2.   Plaintiff's Mother's Statements

The Appeals Council remanded the prior ALJ's decision, in part, for consideration of the statements of Plaintiff's mother. [R. 2314.] Plaintiff's mother submitted function reports that largely mirrored Plaintiff's subjective statements to the agency about her symptoms and limitations. [R. 261-68, 290-97.] The ALJ explained that she considered these statements but found them entitled to limited weight. [R. 2224.] The ALJ noted that Plaintiff and her mother did not spend an extended amount of time together, and that Plaintiff's mother acknowledged she did not know details such as whether Plaintiff needed reminders to take medication, whether she cooked, or whether her impairments affected her hobbies. [*Id.*] These gaps in knowledge reasonably led to the ALJ to conclude that Plaintiff's mother's statements were of limited value.

Plaintiff criticizes the ALJ's assessment of her mother's opinions because "[a]n ALJ must consider a third party's opinion, without presuming it is biased." *Garcia v. Colvin*, 741 F.3d 758, 791 (7th Cir. 2013). But the ALJ made no such presumption. The ALJ did not assign limited weight to these opinions simply because of familial relationship. To the contrary, the ALJ explained which parts of the mother's testimony she found credible (or not) and the reasons for such determinations. The ALJ explained that weaknesses in the statements themselves, particularly since the mother had an admitted a lack of knowledge due to how little time she spent with Plaintiff, led her to conclude they were entitled to little weight. [R. 2224.]

Finally, the Court does not consider it an error for the ALJ to have pointed out that the significant limitations in remembering, concentrating, and completing tasks, *inter alia*, as stated by Plaintiff's mother, were inconsistent with Plaintiff's work history during the applicable period (*i.e.*, making dolls, although this is not specified by the ALJ). This is a proper metric for the ALJ to have evaluated and commented on.

Thus, the ALJ satisfied the directive from the Appeals Council that she evaluate and consider

the statements from Plaintiff's mother. The ALJ adequately explained her reasons for the limited weight she gave to those statement and, thus, the ALJ's decision is substantially supported in this respect. The Court will not overturn the ALJ's decision on this basis.

### 3.3.    Plaintiff's Subjective Symptoms

The regulations set forth a two-step process for evaluating a plaintiff's statements about her impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the plaintiff's symptoms and determines how they limit the plaintiff's "capacity for work." 20 C.F.R. § 416.929. In applying the second step, the ALJ assesses whether medical evidence substantiates the plaintiff's symptoms. *See* Social Security Ruling ("SSR") l6-3p. If medical evidence does not confirm the intensity and persistence of the claimed symptoms, the ALJ considers a list of non-exhaustive factors. *See id.* An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be "patently wrong." *Elder*, 529 F.3d at 413-14.

After summarizing Plaintiff's testimony, the ALJ explained that the evidence substantiated that Plaintiff experienced symptoms and limitations, but not to the degree she alleged. [R. 2206-07, 2211-12, 2216-17.] For instance, the ALJ noted that despite alleging disabling hip and back pain since 2014, treatment records did not reflect hip or back complaints until July 2016. [R. 2211 (citing R. 1968).] Similarly, there were no documents reflecting back or hip pain after 2018. [*Id.*] In fact, aside from a short period prior to the removal of hardware from Plaintiff's leg related to an earlier fracture, objective medical examinations generally showed no significant functional deficits, due to orthopedic

issues, fibromyalgia or any other cause. [R. 2207 (citing R. 543-44), 2208 (citing (R. 832-33, 938), 2209 (citing R. 920, 1676, 1692-93, 2492-93), 2210 (citing R. 2499, 2507, 2517, 2529), 2211.] These generally normal examination findings reasonably undermined, for example, Plaintiff's testimony she could only stand for five to ten minutes and could only walk a block. [R. 2257.]

Similarly, the ALJ found the medical evidence did not substantiate Plaintiff's allegations about the severity of her mental limitations. [R. 2216-17]; 20 C.F.R. § 416.929(c)(2); SSR 16-3p. As the ALJ's summary of the evidence noted, though Plaintiff undeniably suffered from mental impairments, there were few objective mental status examinations that substantiated any significant symptoms. To the contrary, after an initial hospitalization in 2014, Plaintiff's condition was generally stable and, aside from her mood and occasionally her affect, mental status examinations did not reveal significant deficits. [R. 2213 (citing R. 543-44), 2214 (citing R. 550-53, 920, 1217-19, 1276-77, 2037), 2215 (citing R. 1307-08, 1790-91, 2572, 2738-39), 2216 (citing R. 2647-48, 2673-74, 2746-48).] Earlier in the decision, the ALJ identified numerous other times Plaintiff reported or was observed to have normal concentration, a normal attention span, and normal thought processes. [R. 2204 (citing R. 715, 1012, 1383, 1679, 2572, 2600, 2624, 2713-14, 2722, 2730-31, 2748)]; *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (it would be redundant to require ALJ to repeat a discussion throughout the decision). This evidence reasonably undermined, for example, Plaintiff's testimony that her impairments prevented her from concentrating or focusing on a task. [R. 59, 2256, 2259.]

The ALJ also considered that Plaintiff's regular activities were not consistent with the level of either physical or mental limitation she alleged. [R. 2211-12, 2217]; 20 C.F.R. § 416.929(c)(3)(i); SSR16-3p. Plaintiff again criticizes the ALJ for considering her doll making, with the suggestion she crafted these custom-made dolls and sold them online only sporadically or when she felt good. [Dkt. 10, pp.15-16.] Yet Plaintiff testified her doll business generated gross receipts of $38,000 in 2020. [R. 2245.] Although her income after expenses was significantly less, she testified she sold the dolls

16

for $250 to $450 each. [R. 2262.] The ALJ correctly noted that based on that price and her total sales, Plaintiff customized and sold *at least* 84 dolls in 2020. [R. 2211.] In order to do so, Plaintiff testified that she set up her own website and managed a Facebook page to sell her dolls, ordered the undecorated dolls and all of the paint and materials with which to decorate them, and then did the actual work of painting and decorating the dolls. [R. 2211, 2243-44, 2247-48.] Once the dolls were complete, she packaged them and shipped them to the purchaser. [R. 2211, 2251-52.] The clear import is that this was not simply an occasional hobby for Plaintiff, and the Court believes the ALJ reasonably concluded that Plaintiff's ability to manage this business undermined her allegations of severe mental and physical limitations. *See, e.g., Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022).

In addition to her doll making, the ALJ considered Plaintiff's other activities. [R. 2211, 2217.] Although Plaintiff testified she could do very little, at other times she reported cooking, shopping, feeding pets, doing laundry, and cleaning. [R. 2211.] She also traveled with a friend and began and sustained a relationship with a boyfriend during the period at issue, which the ALJ felt shed light on her allegations of severe social isolation. [*Id.*] The ALJ also considered how these activities reflected on Plaintiff's allegations of severe physical and mental limitations. 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p; *Prill*, 23 F.4th at 748. Contrary to Plaintiff's argument, neither her doll making nor her other activities had to demonstrate an ability to perform full-time work in order to be helpful to the ALJ in assessing subjective assertions. Just as in *Prill*, Plaintiff's "daily activities were appropriately determined to be inconsistent with the severity and limitations of her claimed symptoms." 23 F.4th at 748.

Finally, the ALJ considered the type and effectiveness of treatment Plaintiff received. [R. 2212, 2216-17]; 20 C.F.R. § 416.929(c)(3)(iv), (v); SSR 16-3p. Although Plaintiff asserts her treatment was not effective, as demonstrated by "dire findings by treating sources," she provides no citations to these purported "dire findings" of "depression, anxiety, irritability and concentration and memory difficulties." [Dkt. 10, p. 15.] Not only has Plaintiff failed to sustain her burden here of identifying

17

evidence she was disabled, but this has left the Commissioner "unable to address the evidence on which [Plaintiff] purports to rely." [Dkt. 16, p. 5]; *Vang*, 805 F. App'x at 401-02 (plaintiff's burden to prove disability, not ALJ's); *Wilder*, 22 F.4th at 651; *Kaplarevic*, 3 F.4th at 943. But as to what the ALJ addressed, while the record does include references to depressed and anxious mood and Plaintiff's self-reports of concentration or memory difficulties, the ALJ explained that objective examinations did not substantiate concentration or memory deficits. [R. 2204 (citations omitted).] While the ALJ noted that Plaintiff needed intensive treatment at the beginning of the period at issue (*i.e.*, 10-days of partial hospitalization/intense outpatient treatment), and that she attended individual and group therapy at various times [R. 2211, 2214, 2216], the ALJ also considered that Plaintiff regularly reported to her providers that her medication was effective in stabilizing her mental functioning and caused no significant side effects [R. 2216 (citing R. 504, 711, 1010, 1248, 2608, 2635, 2660)]. The ALJ also noted how "there were no further hospitalizations or intense outpatient programs." [R. 2216.] Contrary to Plaintiff's suggestion, the ALJ did not indicate that improvement in Plaintiff's condition meant she had no limitations. Rather, the reported effectiveness of Plaintiff's medication and therapy reasonably suggested to the ALJ that Plaintiff's problems were not so intractable as she suggested.

The Court cannot say the ALJ erred in her evaluation of Plaintiff's subjective symptoms. The ALJ reasonably assessed Plaintiff's subjective assertions, and supported her reasoning in determining these assertions were not fully reliable. The Court will not overturn the ALJ's decision on this basis.

### 3.4. Plaintiff's RFC

Lastly, Plaintiff takes less than a page to argue that the ALJ's RFC assessment inconsistent with Plaintiff's documented limitations. This argument consists of two paragraphs of general language about what analysis the ALJ must use when crafting an RFC, but it is devoid of any specific references to Plaintiff's history or exactly what additional limitations Plaintiff feels the ALJ should have accommodated. [Dkt. 10, pp. 16-17.] This is an insufficient basis for the Court to overturn the ALJ's

decision because it is "unclear what kinds of work restrictions" were missing from the RFC as Plaintiff "hypothesizes none." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). The closest Plaintiff comes to mentioning her own case is when she notes that "[t]hough the AC directed the ALJ to reconsider Plaintiff's RFC, she did little more than insist that her RFC adequately accommodates Plaintiff's limitations." [Dkt. 10, p. 17 (referencing AC decision at R. 2315; citing a single page of the ALJ's decision at R. 2217).] The Court finds this grossly misstates the nature of the ALJ's reconsideration of the RFC. The decision by the prior ALJ afforded approximately 5.5 pages to the reasoning behind that first RFC finding. [R. 18-23.] In contrast, the ALJ this second time around has greatly expanded her explanation of the reasoning behind the RFC, utilizing approximately 18.25 pages to explain the evidence that supports the RFC determination. [R. 2206-2224.] While length alone does not equal adequacy, the ALJ does not spend 18 pages merely insisting she has accommodated Plaintiff's limitations – she uses these pages to adequately explain which evidence supports the residual functional capacity and to explain how that evidence supports the determination. The ALJ's RFC determination is more than substantially supported; the Court will not overturn the ALJ's decision on this basis.

4.    **Conclusion**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence. Defendant's motion for summary judgment [dkt. 15] is GRANTED; Plaintiff's motion for summary judgment [dkt. 10] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED:  June 22, 2023**

_____
Susan E. Cox,
United States Magistrate Judge

19